# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | CR415-057 |
| LUCIANNA M. McCULLOUGH, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Lucianna McCullough was arrested on Fort Stewart Military Reservation for removing two shirts and a mirror from the Post Exchange without paying. *See* doc. 9 at 1 (admitting she took the property "with the intent to convert the same to her own use, and to deprive the United States of the benefit therefrom."). She was charged by information with one count of theft of government property under 18 U.S.C. § 641, but it was later dismissed without prejudice pursuant to a pre-trial diversion agreement. Docs. 1 & 7. Two years later, McCullough asks the Court to exert its "ancillary jurisdiction and equitable authority" to "indefinitely erase, or purge, [her] arrest record."

Doc. 9. The Government opposes. Doc. 10.[1]

McCullough argues that while she has not been *convicted* of any crime, "her federal arrest, and its formal recording, continually pose significant, and immediate, professional and social challenges, which prove beyond the mutually-agreed upon, and cognized, penalty to which the parties disposed on her matter." Doc. 9 at 5. She "maintains a reputable career in the banking industry" but lives in fear that her employer (the Navy Federal Credit Union) will someday run a background check. *See id.* at 5-6 (in order to keep working, she must be "bonded" as part of the bank's insurance but "an employee may not be bonded if such employee retains a record of dishonest behavior."), *id.* at 6-7 (if promoted to mortgage loan officer, she will be submitted to another background check), *id.* at 7 (she did not pursue a position with the bank's overseas branch in Africa because she feared her criminal record would be discovered). Her arrest record also prevents her from

---

[1] The Government preliminarily contends that McCullough's request is unripe because she has not exhausted her administrative remedies. It cites a Department of the Army regulation governing the process for amendment of Military Police records. Doc. 10 at 2 (citing Army Regulation 190-45, Law Enforcement Reporting, para. 3-6 (Sept. 27, 2016)). However, that regulation is "not intended to permit challenging an event that actually occurred" and, as defendant admits, she "stipulates" to the facts of her arrest. Doc. 11 at 3-4. Thus, it is unclear that any administrative remedy exists for McCullough to pursue, and the Court will limit its analysis to the merits.

2

obtaining a "Sentry Pass, which allows for convenient customs entries into and out of Mexico and the United States." *Id.* McCullough argues that she "remains undeserving of the continued punitive effects her arrest record poses." *Id.* at 8.

McCullough contends the Court has the power to expunge her arrest record through its ancillary jurisdiction and "inherent, equitable power" over her criminal case. Doc. 9 at 2-4 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)). As summarized by our sister circuit:

> A federal court invokes ancillary jurisdiction as an incident to a matter where it has acquired jurisdiction of a case in its entirety and, as an incident to the disposition of the primary matter properly before it. It may resolve other related matters which it could not consider were they independently presented. Thus, ancillary jurisdiction permits a court to only dispose of matters related to the original case before it. The doctrine of ancillary jurisdiction does not give district courts the authority to reopen a closed case whenever a related matter subsequently arises. The Supreme Court in recent years has held that ancillary jurisdiction is much more limited.
>
> In *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), the Supreme Court reiterated that federal courts are courts of limited jurisdiction. It instructed that "[T]hey possess only that power authorized by the Constitution and statutes, which is not to be expanded by judicial decree." In *Kokkonen*, the parties had arrived at a court approved settlement agreement and the District Court dismissed the case. The Supreme Court held that the District Court lacked subject matter jurisdiction subsequently to

> grant a motion to enforce the settlement agreement. Because the Order of Dismissal did not reserve jurisdiction in the District Court to enforce it, the Supreme Court held that the doctrine of ancillary jurisdiction did not apply.
>
> In analyzing the decisional law on the doctrine of ancillary jurisdiction in *Kokkonen*, Justice Scalia, writing for a unanimous Court, concluded that federal courts have asserted ancillary jurisdiction for two separate, though sometimes related, purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 380. We do not believe that these purposes contemplate a petition for the expungement of a criminal record.

*United States v. Dunegan*, 251 F.3d 477, 478-79 (3d Cir. 2001).

Here, the charges against McCullough were dismissed by the Government due to a pre-trial diversion agreement. So, there is no Court *order* over which this Court may exert ancillary jurisdiction within the meaning of *Kokkonen*. *See United States v. Field*, 756 F.3d 911, 916 (6th Cir. 2014) (where charges against defendant were dismissed for lack of evidence, the Court declined to expunge the record of Field's arrest because "the record that [she] seeks to have expunged is an FBI record having no relation to any district court order. Therefore, the assertion of ancillary jurisdiction over [her] motion to expunge is not necessary to vindicate any district court ruling" within the meaning of *Kokkonen*).

The Court must therefore determine whether McCullough has shown a constitutional violation or other circumstance extreme enough to warrant judicial editing of the public record.

> It has been recognized that "[t]here is no specific constitutional or general statutory right to expungement." *United States v. Carson*, 366 F.Supp.2d 1151, 1154 (M.D. Fla. 2004), citing, *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 699-700 (5th Cir. 1997), *cert. denied*, 523 U.S. 1077 (1998). To the extent the district courts have authority to grant expungement, "the Court's privilege to expunge matters of public record is one of exceedingly narrow scope." *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972). Except in cases of juveniles, the Court is unaware of a court approving the expungement of an adult conviction which was not either set aside or found to be the result of government misconduct. This is so despite the adverse consequences which result from the continued existence of a conviction appearing on the public record. Such consequences do not rise to the level of *extreme circumstances* which will justify expungement of a criminal conviction. *See United States v. Schnitzer*, 567 F.2d 536, 540 (2d Cir. 1977), *cert. denied*, 425 U.S. 907 (1978). As the court in *Rogers* stated, "[t]he judicial editing of history is likely to produce a greater harm than [that] sought to [be] corrected." *Rogers*, 469 F.2d at 1085.

*United States v. Goodrich*, 2008 WL 398950 at * 1 (S.D. Fla. Feb. 12, 2008) (emphasis added, footnotes omitted), *quoted in Johnson v. Goodrich*, 2012 WL 5931673 at *1 (S.D. Ga. Nov. 26, 2012).

"Extreme circumstances" refers to scenarios like:

> [1] when mass arrests render judicial determination of probable cause impossible . . . [2] when a court determines that the sole purpose of the arrest was to harass the defendant . . . [3] where the police misused the police records to the detriment of the defendant

5

. . . [4] where the arrest was proper but was based upon a statute later declared unconstitutional . . . [5] when the expungement of criminal records is necessary to preserve basic legal rights.

*United States v. Woods*, 2013 WL 3189081 at * 2 (S.D. Fla. June 20, 2013) (footnote added).

McCullough (admits she) shoplifted and is now suffering the consequences of getting caught. She seeks expungement to alleviate the "consistent, discomforting, question as to how long her career may last, which, adversely, drives every professional decision she is forced to consider." Doc. 9 at 8. Though any adverse consequences to her aspirations resulting from her federal arrest record are unfortunate, she has not shown any "extreme circumstances" warranting expungement in this case.[2] *See Flowers*, 389 F.3d at 740 (district court abused its

---

[2] The civil rights struggle in Selma, Alabama provides the prototypical example of such a circumstance. In 1963, local law enforcement arrested black voters as part of a campaign to limit their franchise. *See United States v. McLeod*, 385 F.2d 734, 738 (5th Cir. 1967). Years later, the federal government asked a district court to, among other things, expunge the records of those arrested. *Id.* The Fifth Circuit ultimately complied, stating that "[i]n order to grant full relief in this case, we must see that as far as possible the persons who were arrested and prosecuted . . . are placed in the position in which they would have stood had the county not acted unlawfully." *Id.* at 749.

This case is a far cry from Selma. *See United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) ("It is possible, even likely, that any person with an arrest or conviction record may well be impeded in finding employment. . . . [I]f employment problems resulting from a criminal record were sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer

expunction discretion where the movant only "fear[ed] that if her records in this matter are not expunged, it will seriously limit her ability to find employment in her field"); *United States v. Schnitzer*, 567 F.2d 536, 540 (2d Cir. 1977) (a rabbinical student's fear that he would be "asked to explain the circumstances surrounding his arrest" in his job hunt was "not harsh or unique" because "an explanation may be expected from those about to enter a profession [and] the harm, if any, which may result does not fall within the narrow bounds of the class of cases where expungement has been declared appropriate."). Her motion for expungement (doc. 9) is therefore **DENIED**.

**SO ORDERED**, this 9th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

be the narrow, extraordinary exception, but a generally available remedy.").